IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD E. JONES, JR., #315-283       *
          Plaintiff,

                        *

     v.                   CIVIL ACTION NO. RWT-06-18

                        *

DEPARTMENT OF CORRECTIONS, et al.,
          Defendants.       *

                     ******

## MEMORANDUM OPINION

On January 3, 2006, Plaintiff, a state inmate presently housed at the Maryland Correctional Training Center [MCTC] in Hagerstown, Maryland, filed the instant 42 U.S.C. §1983 civil rights action alleging that he was denied proper medical care while housed at the Baltimore City Correctional Center. He seeks compensatory damages and injunctive relief. (Paper No. 1). Counsel for Defendants Department of Corrections, Dr. Marcia A. Kane, Ms. Andrews, and Dr. Luka have filed dispositive motions.[1] (Paper Nos. 23, 28, 32, and 35). Plaintiff has not filed a response.[2] No hearing is needed to resolve the question as to whether Plaintiff's Complaint is subject to dismissal. See Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendants' Motions to Dismiss and/or for Summary Judgment shall be granted.

## 1. Factual Background

---

[1] No dispositive motion has been filed on behalf of Dr. Shaw. For the reasons that follow  Dr. Shaw nonetheless is entitled to summary judgment.

[2] Pursuant to the dictates of Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975),  Plaintiff was notified that Defendants had filed dispositive motions, the granting of which could result in the dismissal of his action. (Paper Nos. 24, 26, 33 and 36). Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the Court. Id.

Plaintiff claims that while housed at the Baltimore City Corrections Center he had a lump on his face which needed to be lanced.  Rather than his face being lanced, Plaintiff claims he received a large cut on his face and was not provided stitches.  He states that the incision never healed and he has a large lump and scar on his face which interferes with shaving. (Paper No. 1). He seeks to have his "face fixed" and compensatory damages.

## 2. Standard of review

**A.      Motion to Dismiss**

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Hishon v. King & Spaulding</u>, 467 U. S. 69, 73 (1989) *(*citing <u>Conley v. Gibson</u>, 355 U. S. 41, 45-46 (1957)). "While §1983 complaints that recite bare legal conclusions that are 'wholly devoid of facts' or that are not supported by specific facts pleaded, may warrant dismissal, conclusory legal assertions that are supported by the pleaded facts - even if the factual assertions are equally consistent with a contrary conclusion - should survive a Rule 12(b)(6) motion to dismiss." <u>Revene v. Charles County Commissioners</u>, 882 F.2d 870, 873 (4th Cir. 1989) (citations omitted).  "In considering a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiffs, and its allegations taken as true." <u>Finlator v. Powers</u>, 902 F.2d 1158, 1160 (4th Cir. 1990) (citing <u>Jenkins v. McKeithen</u>, 395 U. S. 411 (1969)).

**B.        Summary Judgment**

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).  In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in his favor.  See Halperin v. Abacus Tech. Corp.,128 F.3d 191, 196 (4th Cir. 1997) (citing Anderson, 477 U.S. at 255).  The non-moving party may not rest upon mere allegations or denials in his pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson, 477 U.S. at 248; Allstate Fin. Corp. v. Financorp, Inc., 934 F.2d 55, 58 (4th Cir. 1991).  The "mere existence of a scintilla of evidence in support of...plaintiff's position" is not enough to defeat a defendant's summary judgment motion.  Anderson, 477 U.S. at 252.

### 3. Analysis

**A.        Correctional Defendants:  Division of Corrections and Baltimore City Correctional Center Medical Department**

Defendants Division of Corrections and Baltimore City Correctional Center Medical Department are not "persons" capable of being sued pursuant to § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Accordingly, Plaintiff's claim against these Defendants is subject to dismissal. Even if Plaintiff had named individual Division of Corrections employees, his claims would be subject to dismissal for failure to exhaust his available administrative remedies.

The Administrative Remedy Procedure was instituted by the Maryland Division of Corrections to provide inmates an informal and formal process for the resolution of complaints and problems; an inmate may utilize this process to resolve institutional issues.  See Division of

Correction Directive 185-100, *et seq.*  Therefore, where an inmate is experiencing problems regarding the conditions of his confinement, he may attempt to resolve the problem by means of the remedy process.  If an inmate is dissatisfied with the remedy response provided by the Warden,  he may appeal that response from the Warden to the Commissioner of Corrections.  If dissatisfied with the response of the Commissioner, the inmate may appeal to the Executive Director of the Inmate Grievance Office.  Finally, if the inmate is still dissatisfied, he may resort to the state courts. Thus, when an inmate is dissatisfied with an ARP response, he may proceed to the next state administrative or judicial appellate step in order to gain the relief he seeks.  Alternatively, if a colorable federal claim has been stated by the grievance stated  in the ARP, the inmate may file a civil action in this Court, after first exhausting his administrative remedies.

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  Chase v. Peay 286 F. Supp. 2d 523, 530 (D. MD.2003); Gibbs v. Bureau of Prisons Office, 986 F.Supp. 941, 943-44 (D.Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); Booth v. Churner, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); Thomas v. Woolum, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review). In Maryland, there are three steps in the ARP process provided by the Division of Correction to its

4

prisoners.  The first is to file a request for an administrative remedy within fifteen days of the incident triggering the complaint.  The complaint should be filed with the warden of the prison in which one is incarcerated.  If the request is denied, a prisoner has ten calendar days to file an appeal with the Commission of Correction.  If the appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office.  See Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.  At this juncture, a prisoner may elect to file a complaint in this court.

The uncontroverted evidence shows that Plaintiff did not file any claims with the IGO regarding his medical care. (Paper No. 28, Ex. 5, Declaration of Marvin Robbins). Plaintiff clearly has failed to exhaust available administrative remedies with regard to his medical claim. Accordingly, his claims against the correctional Defendants shall be dismissed.

**B.     Medical Defendants: Getnet Luka, M.D., Deborah Andrews, R.N., and Marcia Kane, M.D**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F. 3d 630, 633 (4th Cir. 2003) citing Wilson v. Seiter, 501 U.S.294, 297 (1991).  In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.  Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof of two elements. First, the prisoner plaintiff must demonstrate that he was objectively was suffering from a serious

5

medical need.  Second, the prisoner must show that the prison staff subjectively were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious.  Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).  Proof of an objectively serious medical condition, however, does not end the inquiry.  The subjective component requires "subjective recklessness" in the face of the serious medical condition.  Farmer, 511 U.S. at 839–40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Virginia Beach Correctional Center, 58 F. 3d 101, 105 (4th Cir. 1995), quoting Farmer, 511 U.S. at 844.  If the requisite subjective knowledge is established, an official may avoid liability  "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. Brown v. Harris 240 F. 3d 383, 390 (4th Cir. 2001); citing Liebe v. Norton, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The uncontroverted medical records reveal that on November 11, 2004, while housed at the Baltimore City Correctional Center, Plaintiff was seen by Dr. Kane during physician's sick call for among other things,  a cyst on his left cheek. Plaintiff complained that the cyst had gradually gotten

larger and more painful.   Dr. Kane ordered a surgical consultation to determine whether the cyst should be removed.  Paper No. 32, Ex. B. at 1-2.  On November 16, 2004, Plaintiff submitted a sick call slip complaining that the cyst had grown larger and more painful and that the surgical consult had not occurred.  Id., at 3.   Dr. Kane contacted Dr. Shah who indicated he would see Plaintiff that night at the Maryland Transition Center ("MTC") dispensary for "I&D" (incision and drainage) of the cyst. Id.

On November 16, 2004, Dr. Shah performed the incision and drainage of the cyst.   He ordered antibiotics and daily dressing changes for the incision. Id. at  4.  Plaintiff was seen by Dr. Kane for follow up on November 18, 2004.  Dr. Kane noted that Dr. Shah had placed a drain in the incision which was changed every day.    She further noted that the abscess was draining pus and serosanguinous fluid and that mild pressure caused more drainage from the area and allowed the area to become soft.   Dr. Kane ordered daily dressing changes until the incision healed, continued expression of fluid from the incision, and antibiotics.  Id. at 8-10

Dr. Luka examined Plaintiff on December 9, 2004, and noted that the incision had healed well.  Plaintiff did not complaint of any swelling or pain and he was advised by Dr. Luka to return to the clinic as needed.  Id. at 11.

Plaintiff was transferred from MCTC to the Central Laundry Facility on April 29, 2005. Id. at 12 and Paper No. 28, Ex. 1 at 1.   On July 13, 2005, Dr. Motti Mulleta examined Plaintiff as a result of a sick call slip that the cyst had returned and was growing larger and was sore.  Paper No. 32, Ex. B at 13-14.   Dr. Mulleta diagnosed the cyst as a carbuncle and ordered warm compresses to the area and an antibiotic.  Id.   Plaintiff submitted another sick call slip on July 27, 2005, complaining of continued swelling on his face.  He was examined by Dr. Mulleta on July 29, 2005.

Id. at 16.  Dr. Muletta found no significant hardening, no swelling or, warmth, and no tenderness in the area.  He diagnosed the problem as a resolving carbuncle and advised Plaintiff to continue warm compresses.  Id.

On August 26, 2005, Plaintiff filed another sick call slip stating that the lump was growing larger and was very sore. Plaintiff was examined by Dr. Augustine Bosah on August 29, 2005.  Dr. Bosah diagnosed the condition as inflamed hair follicles and ordered antibiotics.  Id. at 18-19.

Plaintiff was transferred form the Central Laundry Facility back to MCTC on December 8, 2005. Id. at 20 and Paper No. 28, Ex. 1 at 1.  Plaintiff did not file another sick call slip regarding the lump on his face until March 18, 2006.  At that time he asked for antibiotics.  He was examined by Dr. Rakesh Malik, who determined that Plaintiff did not require medication or treatment at that time and educated Plaintiff about skin care. Paper No. 32, Ex. B at 21-22.

Under these facts, there is no objective evidence to show that the care Plaintiff received was inappropriate.  Although the Court has no hesitancy in accepting Plaintiff's assertion that he has a scar on his face, a contention which he did not complain of in any of the sick call slips presented to the Court, the medical records affirmatively reflect that he was administered medical attention and treatment in accordance with the professional opinions and judgments of prison medical personnel. Plaintiff presents no evidence demonstrating that Defendants in any way disregarded a substantial risk to his health.  It appears to the Court that Plaintiff merely disagrees with the course of treatment he received for his complaints.  Specifically, it appears that the plaintiff believes that his cyst could have been drained with a smaller incision.  Such disagreements with a course of treatment do not provide the framework for a federal complaint under 42 U.S.C. § 1983, but rather, at most state a claim for negligence.  See generally, Russell v. Sheffer, 528 F. 2d 318 (4th Cir. 1975).  The Court

simply cannot find from the uncontroverted medical records before it that the medical care received by Plaintiff was so egregious as to constitute an Eighth Amendment violation.

**4. Conclusion**

For all the foregoing reasons, Plaintiff's complaint against Dr. Shaw shall be dismissed without prejudice for failure to effect service.  The Correctional Defendants' Motion to Dismiss and the Medical Defendants' Motions for Summary Judgment shall be granted.   A separate Order follows.

_____/s/_____
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

Date: 2/21/07